## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **GREGORY N. CRENSHAW,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action File No.:** |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **GEORGIA FARM BUREAU MUTUAL** | ) | |
| **INSURANCE COMPANY;** | ) | |
| **GEORGIA FARM BUREAU** | ) | |
| **FEDERATION, INC.;  and** | ) | |
| **GEORGIA FARM BUREAU, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff, Gregory N. Crenshaw files this his Complaint for relief, and respectfully shows the Court as follows:

## PRELIMINARY STATEMENT

1.

This civil rights action is brought pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000a, 2000e, & *et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1973, 29 U.S.C. §§ 621-634, the Employment Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"), and supplemental Georgia state law claims.  Plaintiff was subjected to discrimination

based on age.   Plaintiff seeks injunctive and equitable relief, back pay and compensatory and liquidated damages to remedy these civil rights violations. Plaintiff seeks damages for interference with ERISA rights, unpaid pension benefits, violation of COBRA rights, civil penalties, and to recover costs and attorney's fees.

## JURISDICTION AND VENUE

2.

The Court has subject matter jurisdiction under Title VII 42 U.S.C. §§ 2000e, et seq., as amended, ADEA, 29 U.S.C. § 626(c); and 28 U.S.C. § 1331 & § 1343(a)(4); 29 U.S.C. § 206(d); 28 U.S.C. § 1367; ERISA,  29 U.S.C. § 1132.

3.

Liquidated damages are sought pursuant to 29 U.S.C. §§ 626(b), and 2617(a).  Compensatory and punitive damages are sought pursuant to 42 U.S.C. § 1981a, 29 U.S.C. § 2617(a), and state law.  Attorneys' fees and expenses of litigation are sought pursuant to 42 U.S.C. §§ 1988, 2000e-5(k), 29 U.S.C. §§ 216(b), 260, 2617(a), Fed. R. Civ. P. 54, and state law.  Equitable relief is sought under 29 U.S.C. § 2617(b), and state law.

4.

Venue properly lies in the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. § 1391(b) (venue generally), 29 U.S.C. § 1132(e)(2),and Local Rule 3.1, N.D. Ga., because Defendants conduct business in

the Northern District of Georgia, the unlawful employment acts and the violations of Plaintiff's ERISA, COBRA, and state rights were committed in this district.

5.

Plaintiff satisfied the statutory prerequisite under 42 U.S.C. § 2003e5(b)(e) that a charge is filed with the EEOC prior to bringing this suit. On April 30, 2020, within 180 days of the last date of discrimination, Crenshaw filed EEOC Charge No. 410-202020-05333 regarding discrimination in violation of Title VII and the ADEA (the "Charge"). A true and correct copy of the charges are attached hereto as Exhibit "A", and are incorporated herein by reference.

6.

More than 180 days have passed since the filing of the Charge without determination by the EEOC.

7.

On or about October 5, 2021, the EEOC has issued a right to sue on the Charge No. 410-2020-05333, which was received by Crenshaw through the U.S. Mail on December 9, 2021, less than ninety (90) days prior to the filing of the Complaint. True and correct copies of the Right to Sue is attached hereto collectively as Exhibit "B".

## PARTIES

8.

Plaintiff Gregory N. Crenshaw, is an adult citizen and resident of the United States and Cobb County, Georgia.

9.

Defendant Georgia Farm Bureau Mutual Insurance Company (the "Company"), is a Georgia Corporation, with its principal place of business at 1620 Bass Road, Macon, Bibb County, Georgia 31210, and may be served with the Complaint and Summons by serving its registered agent, George B. Monk at the stated address, if it does not acknowledge or waive service.

10.

Defendant Georgia Farm Bureau Federation, Inc. ("the Federation"), purports to be a cooperative marketing association pursuant to the provisions of O.C.G.A. § 2-10-80, et seq., the Cooperative Marketing Act, with its principal place of business at 1620 Bass Road, Macon, Bibb County, Georgia 31210. The Federation may be served with this Complaint and Summons by serving its registered agent, Jon Huffmaster Davis, Sr., at the stated address, if it does not acknowledge or waive service.

11.

Defendant Georgia Farm Bureau, Inc. ("GAFB"), is the Plan

Administrator for the company's Georgia Farm Bureau Companies Employee Stock Ownership Plan (the "Plan"), and has its principal place of business at 1620 Bass Road, Macon, Bibb County, Georgia 31210.   GAFB may be served with this Complaint and Summons by serving its registered agent, Jon Huffmaster Davis, Sr., at the stated address or P.O. Box 7068, Macon, Bibb County, Georgia 31209-7068, if it does not acknowledge or waive service.

## STATEMENT OF FACTS

12.

The Defendants controlled and directed Crenshaw and his employment, terms and conditions of employment, and termination.   The officers and lines of authority are commingled in such a way that Crenshaw worked for all, such as with the Company setting commission percentages and the Federation setting override percentages, and GAFB controlling pension and health insurance matters.

13.

The Company and the Federation are Crenshaw's joint employer, and it is not possible to separate them.   Crenshaw received his W-2s from the Company and his work location was in Fulton County at space provided by North Fulton Georgia Farm Bureau, Inc. through Memorandum of Agreement between that entity

and the Federation.  Collectively, the Defendant Company and Defendant Federation are Crenshaw's joint employer and are hereafter referenced as "Employer."

14.

At all times relevant hereto, Employer employed more than 500 employees and was and is an "employer" within the meaning of Title VII and the ADEA.

15.

Plaintiff is an "employee" as defined by Title VII and the ADEA.

16.

Plaintiff is a 60-year-old male and was age 59 at the time of termination.

17.

Crenshaw began him employment with Employer on September 21, 1987.

18.

Crenshaw served as agency manager at Fulton County Farm Bureau from approximately 2002 until termination on February 17, 2020.

19.

At least 2 years before termination, Associate State Sales Director, Kirk Adams asked Crenshaw about his retirement plans, and when he was planning to retire and "how much longer are you planning on being here."

20.

For approximately 2 years prior to his termination, Crenshaw's direct supervisor, District Manager Brent Wiley, repeatedly asked him when he was going to retire, how long was he going to work, "how long do you have." Wiley expressly told Crenshaw he had to have a game plan and an exit strategy and that he needed to hire some agents because he needed to have agents to replace him.

21.

Within 6 months of his termination, Crenshaw's county secretary, Danielle Loden, also asked him the same and similar questions about when he was going to leave and when he would retire, and upon information and belief, she asked these questions at the direction of Wiley, Adams, and other managers, officers, and employees of the Employer.

22.

Plaintiff was discriminated against and suffered adverse employment actions, including requiring Crenshaw to work more hours and hit higher goals with fewer and fewer resources and personnel, extra scrutiny, and termination, because of his age.

23.

Crenshaw used a contact management program ("ACT") connected to Employer's secure network to store his client contact information for over 31 years. When Employer replaced his computer, it crashed and he lost 10 years of data, but was able to recover about 70% of it.  Thereafter, since shortly after he became agency manager at Fulton County Farm Bureau in 2002, Plaintiff had a hard drive on his desk visible in his office to make sure he did not lose his contact information again.

24.

The hard drive was connected to his computer and, Crenshaw understood, was secure on the Employer's network.  IT had access to his computer and hard drive and Crenshaw informed them it was back-up for the ACT program. No objection was raised.

25.

Employer had knowledge of the hard drive and its use for approximately 20 years prior to the alleged investigation and termination, but no one every objected, questioned its use, nor told Crenshaw he should not use it, nor that it was a violation of any work rule.

26.

Employees who knew about the hard drive use by Crenshaw prior to November 26, 2019, include IT Department Heads, IT technician and two of that

person's supervisors, a Director of Sales, a District Manager who was Crenshaw's direct supervisor, and a former Agency Manager of White County.

27.

Crenshaw was having issues with his computer in November 2019, IT was picking up Crenshaw's computer for replacement,  and the County Secretary had placed the hard drive in the conference room sitting on a table at Crenshaw's request.

28.

On November 26, 2019, Crenshaw's District Manager and supervisor, Brent Wiley, came to Crenshaw's office with an attorney and told him he was being investigated for having an external hard drive connected to the computer.  They did not mention any work rule or alleged violation of any work rule, and said nothing about any alleged payment information.  They removed the hard drive from the conference room.

29.

On that same day, Crenshaw explained the use of the hard drive for years, that IT  department and "everyone else employed by" the Employer had knowledge of the hard drive for years; and the District Manager and attorney took Plaintiff's keys and escorted him out of the office.

30.

No one from Employer contacted Crenshaw about this investigation, and, upon information and belief, no investigation took place.

31.

On February 6, 2020, the attorney advised though counsel that Crenshaw was being terminated effective February 17, 2020.  The reason given for termination was violation of a work rule, in that they asserted Crenshaw had stored confidential client payment information on the hard drive.

32.

Crenshaw had no knowledge of any such work rule or any violation.

33.

Crenshaw did not enter into payment or credit card information into the ACT program on the hard drive, and to his knowledge, no such data was on that ACT program.

34.

Employer later gave differing reasons for Plaintiff's termination citing different work rules than those initially expressed.

35.

The Employer's proffered reasons given for termination are false and pretext.

36.

Employer or its agents did not return the hard drive to Crenshaw, and retained the hard drive for a period of time.

37.

Employer failed to provide and documentation that the hard drive contained confidential client payment information.

38.

Despite repeated requests, Employer failed and refused to allow Crenshaw access to have a computer expert examine the hard drive, but has since returned the hard drive to Plaintiff.

39.

Employer was aware that Crenshaw would be age 60 on March 9, 2020, only 3 weeks later, and that he would have been eligible to retire with full retirement benefits.

40.

Employer replaced Crenshaw with a substantially younger worker.

41.

Upon termination, GAFB did not provide Crenshaw with the required COBRA notice re his rights to continue health insurance benefits under ERISA.

42.

As a direct consequence of these actions, Crenshaw suffered loss of benefits, including loss of life insurance paid at group rates and health insurance benefits paid for by the Employer until age 65, and other benefits to be proven at trial.

**COUNT I**
**DISCRIMINATION**
**IN VIOLATION OF TITLE VII**

43.

Crenshaw is over age 40 and therefore a member of a protected class under Title VII.

44.

At all times relevant thereto, Crenshaw was qualified for his position as Agency Manager at Employer.

45.

Plaintiff was qualified for the position as he had been performing the specific job for a significant amount of time.

46.

Crenshaw was subjected to numerous questions and comments about his age, when he would retire, his plan to leave, and his replacement in the two years before filing his Charge with the EEOC.

47.

Crenshaw was discriminated against and suffered adverse employment actions, including requiring Plaintiff to work more with fewer and fewer resources and personnel, extra scrutiny, and termination, because of his age.

48.

Employer terminated Plaintiff on the basis of age in violation of Title VII, and other laws.

49.

Employer gave Plaintiff no reasons for termination, but offered violations of different policies in the discussion with his former counsel and then in the Notice of Termination as the reasons for termination.

50.

The reasons offered for Plaintiff's termination were false and pretext.

51.

Employer replaced Crenshaw with a substantially younger worker.

52.

Employer's treatment of his Crenshaw because of his age, in terms and conditions of employment, conduct, and termination, violates the statutory provisions and protections of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.

53.

Employer's acts and conduct constitute willful and intentional age discrimination. Employer has engaged in its discriminatory practices intentionally and/or with malice and/or with reckless indifference to Crenshaw's rights.

54.

As a direct and proximate result of Defendants' violations of Title VII, Plaintiff has suffered damages, including but not limited to, back pay, front pay, loss of benefits, compensatory damages, benefits of employment, emotional distress, mental anguish, humiliation, pain and suffering, and Plaintiff is entitled to the relief as set forth in the Prayer for Relief below.

## COUNT II
## AGE DISCRIMINATION UNDER ADEA

55.

Employer discharged Plaintiff from a previously held position.

56.

For approximately two years prior to his termination, Crenshaw's supervisor, the Associate State Sales Director, and the County Secretary repeatedly asked Crenshaw how much longer are you planning on being here and when he would retire.

57.

Plaintiff was discriminated against and suffered adverse employment actions, including requiring Crenshaw to work more with fewer and fewer resources and personnel, extra scrutiny, and termination, because of his age.

58.

Employer terminated Plaintiff on the basis of age.

59.

Employer offered different and shifting reasons for the termination.

60.

The reasons offered were false and pretext.

61.

Employer replaced Crenshaw with a substantially younger worker.

62.

Employer's treatment of his Crenshaw because of his age, in terms and conditions of employment, conduct, and termination, acts and conduct violated the

ADEA, 29 U.S.C. §§ 621, et seq., entitling Plaintiff to all remedies and recovery against the Employer allowed Plaintiff under the ADEA.

63.

Employer's acts and conduct constitute willful and intentional age discrimination.  Employer has engaged in its discriminatory practices intentionally and/or with malice and/or with reckless indifference to Crenshaw's rights.

64.

As a direct and proximate result of Defendants' violations of the ADEA, Plaintiff has suffered damages, including but not limited to, back pay, front pay, loss of benefits, Plaintiff is entitled to the relief as set forth in the Prayer for Relief below.

65.

The Defendants' discrimination against Plaintiff on the basis of age was willful, entitling Plaintiff to recover liquidated damages under the ADEA.

## COUNT VI
## ERISA

66.

The Georgia Farm Bureau Companies Employee Stock Ownership Plan (the "Plan") qualifies and an employee pension benefit plan under ERISA, as defined by . 29 U.S.C. §§ 1002(2).

67.

Defendant GAFB is the Plan Administrator of the Plan.

68.

When the Employer terminated Crenshaw, it did so in conjunction with GAFB and in order to avoid allowing Plaintiff to accrue additional benefits and avoid paying Plaintiff additional matching contributions under the Plan, as well as health insurance benefits.

69.

Plaintiff shows that he has exhausted all requisite administrative remedies, the Plan Administrative has waived exhaustion, and, in any event, any such exhaustion efforts would have been futile.

70.

Plaintiff rolled over his interest in the Plan after his termination.  When the Plan's agent Principal Life Insurance Company rolled over Plaintiff's interest in the Plan after his termination, such amounts did not include funds attributable to his continued employment after that termination date and until he would retire voluntarily.

71.

Plaintiff is entitled to the remainder of his pension benefits which he would have accrued under the Plan, and health insurance benefits from age 60

through age 65 paid for by the Employer, life insurance paid at group rates, but for his termination by Employer and GAFB to avoid paying or allowing such benefits.

72.

GAFB's actions are a violation of ERISA Section 510, 29 U.S.C. § 1140, for which Plaintiff is entitled to recover benefits lost as a result of violations of the statute.

73.

Plaintiff is entitled to recover reasonable attorney's fees and costs for bringing this action pursuant to 29 U.S.C. § 1132(g).

74.

Defendant GAFB's violations of ERISA have caused Plaintiff to incur litigation costs and attorney's fees to remedy the breaches herein.

## COUNT VII
## COBRA

75.

Plaintiff and his dependent spouse's health and medical benefits were provided by Defendant GAFB, who was also the Plan Administrator, through a self-funded health and welfare benefit plan ("Health Plan").

76.

The premiums were paid for by the employee until age 60 and then the premium for Crenshaw should have been paid by the Employer from age 60 through age 65.

77.

Plaintiff is entitled to notice of their eligibility and rights under the Consolidated Omnibus Budget Reconciliation Act ("COBRA") pursuant to 29 U.S.C. § 1166, upon the occurrence of a qualifying event as defined in the statute.

78.

The Employer's termination of Plaintiff on February 7, 2020, effective February 17, 2020, is a qualifying event as defined in the statute.

79.

Defendants did not send and never provided to Plaintiff or his dependent spouse proper statutory notice under COBRA explaining the benefits or providing an opportunity to elect coverage or coverages at the time of the qualifying event or at any time since.

80.

By letter dated February 12, 2020, GAFB Mutual and GAFB Casualty issued a letter on joint letterhead also referencing "Georgia Farm Bureau Companies" stating that Crenshaw's medical, dental, prescription, and vision covered would terminate on February 29, 2020.

81.

Plaintiff and his dependent spouse were entitled to at least 18 months of COBRA coverage.

82.

Plaintiff had to obtain other health insurance coverage for himself and his dependent spouse at his own cost through his spouse, and at higher cost.

83.

Plaintiff has been injured and has suffered general and special damages as a result of these Defendants' wrongful actions, including but not limited to, having to pay premiums for medical coverage from age 60 through age 65.

84.

Plaintiff is entitled to recover general, special, and other damages to be proven at trial as well as statutory penalties for failure to provide notice and coverage, and reasonable attorney's fees and costs of the litigation.

## COUNT VIII
## STATE LAW NEGLIGENT RETENTION

85.

Employer knew, or, in the exercise of ordinary care, should have known, that its employees, including but not limited to, Adams, Wiley, and Loden were engaging in, and had previously engaged in, unlawful conduct against Plaintiff Crenshaw, a protected employee.

86.

Despite Defendants' actual or constructive knowledge of the propensities of those employees to engage in such unlawful conduct, it negligently retained those employees.

87.

Employer allowed Crenshaw to be harassed in the work place about his age and retirement, before terminating him, and replacing Crenshaw with a substantially younger worker.

88.

Upon information and belief, Employer has engaged in similar age discrimination in the past.

89.

As a direct and proximate result of Employers' negligent retention of those employees, Plaintiff was treated in unlawfully in the workplace, suffered damages, and is entitled to damages, including costs and attorney's fees under O.C.G.A. § 13-6-11, and all other applicable law.

90.

Employer's actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the

presumption of conscious indifference to consequences.  As a result, the Petitioners are entitled to punitive damages against Employer under O.C.G.A. § 51-12-5.1.

91.

Employer's actions were taken with the direct intent to harm Plaintiff; therefore, there is no cap on punitive damages under  O.C.G.A. § 51-12-5.1(f).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Crenshaw respectfully invokes the powers of this Court and prays for the following:

a)   That the Court grant trial by jury;

b)   That the Court issue a declaratory judgment that Defendant's acts, policies, practices, and procedures complained of herein violated Plaintiff's rights to be free from discrimination as provided by Title VII,  the ADEA; ERISA, and COBRA, and that the Court permanently enjoin Employer from such conduct in the future;

c)   That Plaintiff have and recover from Employer all amounts available under Title VII and the ADEA, including but not limited to back pay, front pay, compensatory damages, liquidated damages, damages for mental anguish, benefits, and all other damages allowed by law;

d)   That Plaintiff have judgment for damages under ERISA, including the unpaid pension benefits to which he is entitled under the Plan but for the interference with his rights;

e)   That Plaintiff have judgment for damages for failure to provide statutory notice and violations of his COBRA rights;

f)   That Plaintiff have judgment on his state law claim against Employer;

g)   That Plaintiff be awarded all general, special, consequential, and inconsequential damages for his state law claim of negligent retention in an amount to be determined by the enlightened conscience of an impartial jury;

h)   That Plaintiff we awarded punitive damages on his state law claim:

i)   That the Court award pre-judgment and post-judgment interest to Plaintiff on any of the above amounts;

j)   That Defendants be ordered to pay to all of Plaintiff's costs and attorneys' fees of this action pursuant to the applicable statutes;

k)   That the Court grant such other and further relief as it deems just and proper.

**RESPECTFULLY SUBMITTED**, this  3rd day of January, 2022.


    /s/ *Mary A. Prebula*

Mary A. Prebula
Georgia Bar No. 586743
Prebula & Associates LLC
5555 Glenridge Connector, Suite 200
Atlanta, GA 30342
(770) 495-9090
mprebula@prebulallc.com

\\pa-server\documents\Crenshaw\Pleadings\2022 0103 Complaint Final.docx

EEOC Form 5 (11/09)

| | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

☐ FEPA
☒ EEOC

410-2020-05333

and EEOC

| State or local Agency, if any |
|---|

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Gregory N. Crenshaw | (706) 364-2123 | March 9, 1960 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 3431 Liberty Lane | Marietta, Georgia 30062 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| Georgia Farm Bureau Mutual Insurance Company ("GFBMIC") | 1500+ | (478) 474-8411 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 1620 Bass Road | Macon, Georgia 31210 | |

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| Georgia Farm Bureau Federation, Inc. | 1500+ | (478) 474-8411 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 1620 Bass Road | Macon, Georgia 31210 | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN

☐ RETALIATION ☒ AGE ☐ DISABILITY ☐ GENETIC INFORMATION

☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest — Latest: Feb 17, 2020

☐ CONTINUING ACTION

**RECEIVED**
**By EEOC at 12:26 pm, Apr 30, 2020**

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. STATEMENT OF PERSONAL HARM:

I was employed by Respondents from September 21, 1987 until Respondents terminated me on February 17, 2020. I served as an agency manager from approximately 2002 until my termination. On Tuesday, November 26, 2019, my district manager and an attorney representing Respondents came to my office and told me that I was being investigated for having an external hard drive connected to my computer and that they were doing an investigation. I explained that I had utilized the hard drive for years and that the IT department and everyone else employed by Respondent had known that for years because it was sitting on my desk, but they took my keys and walked me out of the office. After that meeting, no one contacted me to ask me any questions about the matter. On February 6, 2019, Respondents (through their attorney) advised me that I was being terminated effective February 17, 2020. Respondents claimed they were terminating me for violating a work rule that I did not violate and for reasons that would not support termination. (Details are provided in Paragraph II.) Respondents replaced me with a substantially younger employee. Respondents were aware that on March 9, 2020 (my 60th birthday), I would have been able to retire with full retirement benefits. But, Respondents fired me three weeks prior to that date after thirty-two years of dedicated service.

II RESPONDENT'S REASON FOR ADVERSE ACTION:

Respondents stated that I was terminated because I had an external hard drive attached to my computer that contained confidential client information, namely payment information. This claimed reason is pretext. First, as is known to Respondents, I had the hard drive in place for approximately twenty years. I used a contact management program ("ACT") to store my client contact information for thirty-one years. About twenty years ago, Respondents replaced my computer and shortly thereafter the new computer crashed. At that point, I had ten years of client information that was lost. Thankfully, I was able to recover approximately 70% of the client data through the help of my superior's friend who was a computer expert. Since that time, I maintained an external hard drive to ensure I did not lose my client contact information again. The hard drive was on my desk connected to my computer during all those years. As it was connected to my computer, it was my understanding that the information contained in it was secure on the company's network. Every IT employee

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 4/23/20 — Date — Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To:

☐ FEPA

☒ EEOC

Agency(ies) Charge No(s):

410-2020-05333

and EEOC

_State or local Agency, if any_

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

and every one of my bosses for the last twenty years has been aware of the hard drive. When IT has connected to my computer, they saw the drive and some asked what a Simple drive was. I explained that it was back-up for my ACT program. No one ever questioned it or told me I should not have it.

Second, I did not enter any credit card information into the client contact system. And, the information on the hard drive is protected in any event. The hard drive is a back-up program, meaning that it is not stored in an understandable manner, i.e. not the same manner as the information is stored on my computer. In order to retrieve the information, one would have to use the same version of the ACT program that I used and would have to have the computer knowledge to recreate the data into a usable format. In this regard, it is as encrypted as anything on on my computer.

Third, Respondents did not provide me with documentation of its allegation concerning claimed confidential information on the hard drive, nor did it provide me with the opportunity to review the device or to have his own computer expert do so, despite my request. Thus, Respondents did not provide me an opportunity to defend myself.

Since my termination, I have learned that Respondents replaced me with an employee who is approximately substantially younger than me.

III STATEMENT OF DISCRIMINATION:
I believe that Respondents discriminated against me because of my age in violation of the Age Discrimination in Employment Act of 1967 (ADEA; 29 U.S.C. § 621 to 29 U.S.C. § 634). I suffered lost wages, lost benefits, and emotional distress as a result of the Respondents' illegal actions.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I declare under penalty of perjury that the above is true and correct. | NOTARY – When necessary for State or Local Agency Requirements<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 4/23/20 _____<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |